# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LOREN KELLY DUCK, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN COLVIN, )<br>Acting Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-15-301-RAW-SPS |

## REPORT AND RECOMMENDATION

The claimant Loren Kelly Duck requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born July 28, 1963, and was forty-nine years old at the time of the administrative hearing (Tr. 48, 200). He went to college but did not earn a degree, and has worked as a sales representative and delivery truck driver (Tr. 31, 48). The claimant alleges that he has been unable to work since November 12, 2010, due to bipolar disorder, depression with aches and pains, weakness, hearing aids, PTSD, obsessive compulsive disorder, ADHD and memory loss, ADD concentration disorder, and knee problems that were inoperable (Tr. 236).

## Procedural History

On August 8, 2011, the claimant protectively applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Trace Baldwin conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 16, 2014 (Tr. 13-33). The Appeals Council denied review, so the ALJ's written opinion became the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform a limited range of

light work, *see* 20 C.F.R. §§ 404.1567(b), 416.967(b), except that he could only occasionally push/pull with upper and lower extremities, crawl, and climb ramps and stairs; never climb ladders, ropes, or scaffolding; and could frequently balance, stoop, kneel, and crouch. Additionally, he found that the claimant was able to perform simple and some complex tasks, relate to others on a superficial work basis, adapt to a work situation, and sustain a work routine without special supervision, but that he might have difficulty responding appropriately to the public (Tr. 28). The ALJ concluded that, although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the regional and national economies, *e. g.*, textile sewing machine operator, apparel stock clerk, and small parts assembly (Tr. 31-32).

**Review**

The claimant contends that the ALJ erred by failing to properly account for the evidence related to his knee impairments. Specifically, he asserts that the ALJ: (i) mischaracterized an MRI, (ii) ignored consultative examiner Dr. Chaudry's opinion as to the claimant's physical impairments, (iii) ignored additional evidence referring the claimant to an orthopedist for surgery, and (iv) interpreted his use of a cane as against his credibility rather than in formulating his RFC. The undersigned Magistrate Judge finds the ALJ *did* fail to properly account for the claimant's knee impairment, and the decision of the Commissioner should therefore be reversed.

At step two, the ALJ determined that the claimant had the severe impairments of polyarthalgias/osteoarthritis, obesity, chronic pain syndrome, bipolar disorder, borderline

personality disorder, and anxiety, as well as the nonsevere impairments of restless leg syndrome, insomnia, GERD with hiatal hernia, presbyopia, hypertension, tinnitus, vertigo, vitamin D deficiency, hypokalemia, chronic fatigue syndrome, and attention deficit hyperactivity disorder (Tr. 15-16).  The medical evidence related to the claimant's knees reveals that on October 12, 2011, the claimant had x-rays of his knees performed, but there were no acute osseous abnormalities (Tr. 466).  The claimant began complaining of continuing polyarthralgias (Tr. 509).  Following an MRI of his knees on October 30, 2012, the physician's assistant, Marc Kagan, noted that the claimant had multiple abnormalities of the knee, with the left being worse, and including extensive loss of articular/meniscal cartilage and ACL tear (Tr. 619).  The MRI report indicates that the claimant's right knee had tearing/degeneration of the posterior horn of the medial meniscus, and that the left knee had degenerative changes of the medial and lateral joint compartment (including nearly complete loss of femoral and tibial articular cartilage in the posterior aspect of the joint and extensive loss of femoral and tibial articular cartilage), patellar tendinitis, and chronic ACL tear (Tr. 656-657, 695).  Mr. Kagan further noted that the claimant continued with bothersome polyarthralgia, fatigue, and poor sleep, but was not fully compliant with medications (Tr. 619).  Additionally, Mr. Kagan submitted a referral to Medisaw Orthopedic, and talked with the claimant about how he might need to go through the Choctaw Nation for knee surgery (Tr. 619).  However, notes reflect that the referral to Medisaw Orthopedic was repeated on January 31, 2013, May 31, 2013, and February 18, 2014, but they apparently never received a response from Medisaw Orthopedic to schedule it (Tr. 618, 735, 814).

On January 1, 2013, a physician's assistant at the Chickasaw Nation Ardmore Clinic indicated that the claimant was indefinitely medically disabled, noting that his diagnoses included bipolar disorder, chronic pain syndrome, chronic fatigue syndrome, dysthymia, polyarthralgia, myalgia, restless leg syndrome, anxiety disorder, and others (Tr. 608). He continued to complain of knee pain on February 18, 2014, and again asked for a referral to ortho (Tr. 811). On that visit, his gait was unsteady, and he used a cane to walk, he had decreased range of motion of both knees, and he had tenderness of his joints (Tr. 814).

On April 12, 2013, Dr. S.A. Chaudry, M.D., completed a physical exam of the claimant (Tr. 718). He noted that the claimant walked in using a cane due to pain in his knees (left more than right) (Tr. 718). Upon examination, the claimant had a painful range of motion of the cervical spine with flexion, extension, rotation, and lateral movements of bilateral trapezius muscular tenderness; painful range of motion of the lumbosacral spine with flexion, extension, rotation, and lateral movements with paraspinous muscular tenderness; heel/toe walking could be achieved but slowly due to pain in the knees and feet, and that he used a cane on the exam day but could walk unassisted (Tr. 719-720). He assessed the claimant with osteoarthritis of the cervical spine, osteoarthritis of the lumbosacral spine, osteoarthritis of both knees (left more than right), plantar fasciitis, and hypertension (Tr. 720). He also completed a Medical Source Statement (MSS) of the claimant's physical ability to do work-related activities. As to the claimant's ability to sit/stand/walk, he indicated that the claimant could sit up to six hours a day for thirty minutes at a time, stand up to 1 hour per day for ten to fifteen

minutes at a time, and walk up to one hour per day for five minutes at a time (Tr. 722). He found that the claimant needed a cane to ambulate, could only walk five minutes without the use of a cane, and that the cane was medically necessary (Tr. 722). He further found that the claimant could occasionally use his feet, climb stairs and ramps, and balance, but that he could never climb ladders or scaffolds, stoop, kneel, crouch, or crawl (Tr. 723-724). He then noted a number of environmental limitations (Tr. 725), and in concluding statements found that the claimant's knee/back pain prevented him from bending, pushing, pulling, and prolonged walking/high impact activities difficult (Tr. 726). He found that these limitations had been present for five years (Tr. 726).

In his written opinion, the ALJ found the above-mentioned severe and nonsevere impairments impairments at step two (Tr. 15-16). At step two, he then thoroughly summarized all of the medical evidence, and even made RFC findings (Tr. 16-26). As relevant to the issue on appeal in this case, the ALJ noted that the claimant was reporting bilateral knee pain and continued arthralgia in October 2011, but noted x-rays showed no acute osseous abnormalities, objective physical examination was "essentially unremarkable," and the claimant used a cane although the record did not reflect the cane had been prescribed (Tr. 17). The ALJ made particular note that the claimant was not always compliant with medications (Tr. *e. g.*, 17-18), and then noted that the claimant's MRI of the knees had shown "some tearing/degeneration of the posterior horn of the medial meniscus, but otherwise was unremarkable" (Tr. 18). The ALJ acknowledged that the record was sparse with regard to the claimant's physical impairments, and that he had referred the claimant to Dr. Chaudry for that reason (Tr. 19). He continued, stating

that he believed the claimant's use of a cane was an attempt to deceive Dr. Chaudry because it was "not apparently medically necessary," despite Dr. Chaudry's finding that the cane was medically necessary for the claimant to ambulate more than five minutes at a time (Tr. 19-20). The ALJ noted that Dr. Chaudry was not a treating physician nor was his opinion entitled to controlling weight, and that although the October 2012 MRI "reflects knee problems, [] other medical evidence of record does not reflect significant objective clinical findings sufficient to support significant ongoing limitations and/or impairment with respect to the claimant's gait and/or his ability to walk for prolonged periods of time" (Tr. 20). He then, at step two, declined to assign significant weight to the Dr. Chaudry's MSS but assigned "full weight" to any and all objective clinical and/or laboratory diagnostic findings, then assigned great weight to state reviewing physicians whose opinions pre-dated the claimant's MRI and Dr. Chaudry's assessment (Tr. 21). He *then* found that the claimant did not meet a listing (Tr. 27). At step four, the ALJ summarized the claimant's hearing testimony. He noted the claimant's testimony that he needed a left knee replacement and right knee cartilage repair, then found that the October 2012 MRI *did show* "significant defect in connection with the Claimant's left knee, as well as some defects in connection with his right knee," but faulted the claimant by (erroneously) finding that the record did not reflect the claimant had been referred for surgery (Tr. 29-30). The ALJ further noted the claimant's testimony that he used a cane three quarters of the time, but found that it had not been prescribed (Tr. 30). He then concluded by finding the claimant not credible, only assigning great weight to the non-examining state reviewing physician opinions, not assigning significant weight to Mr.

Kagan's opinion as to the claimant's ability to work, and not assigning significant weigh to Dr. Chaudry's opinion as to the claimant's functional capacity, although he claimed he nevertheless gave "full weight to any and all objective clinical and/or laboratory diagnostic findings" (Tr. 31).

Here, the ALJ failed to properly assess the evidence regarding the claimant's physical impairments. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-1301 (10th Cir. 2003) [quotation marks omitted], *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ noted at step two Dr. Chaudry's findings and assessment, but went to great lengths to discredit his findings and opinion, as summarized

above. Moreover, he repeatedly focused on the fact that the claimant had not been prescribed a cane, to the extent that he found Dr. Chaudry's opinion was not reliable based in part of his finding that a cane was medically necessary. That misstated the standard. "The standard described in SSR 96-9p does not require that the claimant have a prescription for the assistive device in order for that device to be medically relevant to the calculation of [his] RFC. Instead, [he] only needs to present medical documentation establishing the need for the device. The ALJ therefore erred in relying on [the claimant's] lack of a prescription for a cane." *Staples v Astrue*, 329 Fed. Appx. 189, 191-192 (10th Cir. 2009). *See also* Soc. Sec. Rul. 96-9p, 1996 WL 374185, at *7 (July 2, 1996). The ALJ further minimized the findings of the claimant's knee MRI at step two, then acknowledged it reflected significant defect at step four, but nevertheless declined to assign any RFC limitations on this basis because the claimant had not been referred for surgery. In fact, the claimant's referral for an orthopedic evaluation was renewed at least three times in the record, and reflects that the claimant was attempting to seek treatment within the Indian medical health care system because he had no finances otherwise. This indicates a deliberate attempt to pick and choose among the evidence to use only favorable portions in support of the ALJ's opinion. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

Because the ALJ failed to properly conduct an analysis of the evidence and the claimant's RFC, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 31st day of August, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**